IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BOBBY JOE SUGGS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 2:05-CV-1154-T |
| JAMIE MITCHELL, NURSE, *et al.*, | ) ) ) |
| Defendants. | ) |

## DEFENDANTS' SPECIAL REPORT AND ANSWER

Defendants, Southern Health Partners, Inc. ("SHP"), Jamie Mitchell ("Nurse Mitchell") and Dr. Millard McWhorter ("Dr. McWhorter") submit their Special Report and Answer to the Court as follows:

### I.  INTRODUCTION

The plaintiff filed his Complaint on December 7, 2005. The Complaint alleges, presumably, violations of his Eighth Amendment rights. On December 12, 2005, this Court ordered Defendants to submit a Special Report concerning the factual allegations made by the Plaintiff in his Complaint.

### II.  PLAINTIFF'S ALLEGATIONS

The plaintiff appears to be alleging that the Defendants failed to provide adequate or appropriate medical attention in violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the plaintiff alleges that SHP, Jamie Mitchell and Dr. McWhorter denied the plaintiff proper medical care by (a) failing to provide him with the correct blood pressure medication, which plaintiff alleges caused him to have a stroke, and (b) administering

"bedtime" medication to the plaintiff at 4:00 p.m. The plaintiff also claims that he missed a mental health appointment on November 21, 2005.[1]

## III. DEFENDANTS' ANSWER TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the Plaintiff as said allegations are untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled. Plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the law.

## IV. SWORN STATEMENTS

Pursuant to Paragraph 2 of the Court's Order, Defendants submit the affidavits of Dr. McWhorter (Exhibit 1), Nurse Mitchell (Exhibit 2) and Annette Cain (Exhibit 3), who are persons having knowledge of the subject matter of the Complaint. Defendants also refer the Court to the affidavit of Sheriff Anthony Clark, which is attached as Exhibit B to Sheriff Clark's Special Report.

## V. STATEMENT OF FACTS

A. Background

1. Dr. McWhorter has been licensed to practice medicine in the state of Alabama since 1986. From January 1994 to July 1999, he was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, he was the medical director for

---

[1] This statement of the Plaintiff's Allegations is based upon Plaintiff's Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendant an opportunity to answer and address those issues.

2

Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present, he has been employed by SHP as the medical director of the Covington County Jail in Andalusia, Alabama. (McWhorter Aff. at ¶¶ 2-3.)

2. Nurse Mitchell has been a licensed nurse for over twenty-three years. From 1983-1989, she was licensed by the state of Alabama as an LPN. From 1989 to the present, she has been licensed by the state of Alabama as an R.N. From August 2005 to November 16, 2005, she was employed as the medical team administrator for SHP at the Covington County Jail in Andalusia, Alabama. Currently, she is employed as a registered nurse on the medical/surgical floor of Andalusia Regional Hospital in Andalusia, Alabama. (Mitchell Aff. at ¶¶ 2-4.)

3. Annette Cain ("Nurse Cain") has been licensed by the State of Alabama as an L.P.N. since 1982. From September 2005 to the present, she has been employed as an L.P.N. for SHP at the Covington County Jail in Andalusia, Alabama. In late November 2005, she succeeded Nurse Mitchell as medical team administrator for SHP. (Cain Aff. at ¶¶ 2-3.)

4. SHP provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action (November 7, 2005), Dr. McWhorter was the medical director in the jail and Nurse Mitchell was the medical team administrator. (McWhorter Aff. at ¶ 4; Mitchell Aff. at ¶ 5; Cain Aff. at ¶ 4.)

5.  When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (McWhorter Aff. at ¶ 5; Mitchell Aff. at ¶ 6; Cain Aff. at ¶ 5.)

B.  Chronology of the plaintiff's treatment

6.  A true and correct copy of SHP's medical chart concerning the plaintiff is attached to Nurse Cain's Affidavit as Exhibit A. Attached as Exhibit B to Nurse Cain's affidavit are true and correct redacted[2] copies of SHP's inmate services log for November 11 and November 30, 2005. The inmate services log demonstrates when inmates have left the jail for medical services. (Cain Aff. at ¶ 7.)

7.  On November 1, 2005, the plaintiff was booked into the Covington County Jail and completed a medical screening form where he noted a history of "mental illness," "attempted suicide," "mental emotional upset," "hypertension," "contagious disease" and "hepatitis." At the time of booking, he was taking several medications, including Lithium, Trazadone, milk thistle, stool softener and Benicar HCT. (McWhorter Aff. at ¶ 8; Cain Aff. at ¶ 8; Mitchell Aff. at ¶ 9.)

8.  On the next day, November 2, 2005, Dr. McWhorter treated the plaintiff, who presented with a history of hypertension and bipolar disorder. Dr. McWhorter's observation noted a blood pressure of 166/99. Dr. McWhorter ordered that the plaintiff receive Zestoretic 20/12.5 every day for his hypertension and continued the plaintiff on Lithium and Trazadone for his bipolar disorder. (McWhorter Aff. at ¶ 9.)

---

[2] Information on inmates other than the plaintiff has been redacted.

9. Based on Dr. McWhorter's medical experience, Zestoretic is an appropriate and standard medication to administer to patients suffering from hypertension, and is comparable to Benicar HCT, which the plaintiff was taking for hypertension upon his incarceration. Dr. McWhorter did not prescribe Benicar HCT, because Benicar HCT was not on SHP's formulary of accepted medications. (McWhorter Aff. at ¶ 10.)

10. On November 11, 2005, the plaintiff was sent to the emergency room of Andalusia Regional Hospital ("ARH") to be assessed for CVA (stroke) versus TIA (transient ischemic attack). Dr. John Maddox treated the plaintiff at ARH. Based on Dr. McWhorter's review of Dr. Maddox's notes, Dr. Maddox did not diagnose the plaintiff as having a stroke or TIA. Moreover, Dr. Maddox did not change any of the plaintiff's blood pressure medications. Specifically, Dr. Maddox did not take the plaintiff off Zestoretic or prescribe any additional or different blood pressure medication. (McWhorter Aff. at ¶ 11.)

11. On November 12, 2005, Nurse Cain called ARH to check the plaintiff's status. She spoke to the plaintiff's nurse, who informed her that a CT had been done on the plaintiff which confirmed that the plaintiff had not suffered a stroke. On November 13, 2005, the plaintiff was discharged back to the jail. (Cain Aff. at ¶ 12.)

12. From November 14 through November 16, 2005, Nurse Mitchell administered Zestoretic to the plaintiff at pill call, and he did not object to taking it or make any mention that it was causing him any problems. Indeed, from November 14 through December 31, 2005, the nursing staff administered Zestoretic to the plaintiff at pill call every day. (Mitchell Aff. at ¶ 12; Cain Aff. at ¶ 13.)

13. The plaintiff never completed any sick call requests related to his taking Zestoretic nor is there any indication that Zestoretic caused him any problems. (McWhorter Aff. at ¶ 11; Mitchell Aff. at ¶ 12; Cain Aff. at ¶ 13.)

14. In fact, the only sick call slip completed by the plaintiff prior to filing the above-styled lawsuit was on November 23, 2005, where he complained of a bad cold. In response to his complaint, he was seen the next day (November 24, 2005) by nurse Dianne James, who assessed him as having cold symptoms. Dr. McWhorter ordered that he receive CTM 4 mgs, two tablets twice a day for seven days, ibuprofen 800 mgs twice a day for five days, Robitussin 10 cc twice a day for four days, and to drink at least one liter of fluids per day. He was to notify medical staff if he did not improve in three to four days. (McWhorter Aff. at ¶ 12; Mitchell Aff. at ¶ 13; Cain Aff. at ¶ 14.)

15. On December 10, 2005, Nurse Cain performed a history and physical on the plaintiff. In the medical history, the plaintiff said that he had a past hospitalization for stroke, which the plaintiff said was for his November 11-13 hospitalization at ARH. Although Nurse Cain knew that the plaintiff had not suffered a stroke at ARH, she did not argue with the plaintiff and wrote down the information that he gave her. The medical history portion of the history and physical form is completed based on information provided by the inmate. The mental health evaluation notes the plaintiff's two prior suicide attempts and history of bipolar disorder, for which he was receiving Lithium and Trazadone. (Cain Aff. at ¶ 15.)

16. On January 25, 2006, Dr. McWhorter saw the plaintiff for a follow-up to his treatment at ARH by Dr. Maddox. Dr. McWhorter performed a neurological exam on the plaintiff and found that neurological function was intact. Dr. McWhorter's assessment was that the plaintiff

6

may have had a possible TIA probably secondary to blood pressure control but he found no defect present nor did he find that further diagnostic studies were needed. (McWhorter Aff. at ¶ 13.)

    C.    <u>The plaintiff was not denied medical care.</u>

17. Based upon Dr. McWhorter's review of the plaintiff's medical chart and his personal knowledge of treating the plaintiff, it his opinion that the administration of the blood pressure medication Zestoretic to the plaintiff did not cause the plaintiff to suffer a stroke nor has it harmed the plaintiff in any way. In fact, the Zestoretic has actually improved the plaintiff's hypertension; the plaintiff came to the jail with a blood pressure of 166/99 and subsequent vital signs on November 23, 2005 (140/80-72) show improvement in this area. Moreover, it is Dr. McWhorter's opinion that the plaintiff has not suffered a stroke while incarcerated at the Covington County Jail. (McWhorter Aff. at ¶ 14.)

18. With regard to the plaintiff's complaint that he was administered "bedtime" medication at 4:00 p.m., the only medication which Dr. McWhorter ordered the plaintiff to take "hs" (hour of sleep) was Trazadone. The nursing staff administers their last pill call to all inmates between 4:00 p.m. and 5:00 p.m. The plaintiff never completed any sick call request regarding any problem relating to the timing of when he was administered Trazadone. Moreover, based on Dr. McWhorter's medical experience, there should be no negative effects of receiving Trazadone between 4:00 and 5:00 p.m. (McWhorter Aff. at ¶ 15; Mitchell Aff. at ¶ 15; Cain Aff. at 17.)

19. The plaintiff claims he missed his mental health appointment set for November 21, 2006. The plaintiff's mental health appointment on November 21, 2005 was cancelled and rescheduled for November 30, 2005. The plaintiff attended his mental health appointment at Southeast Alabama Mental Health Center ("SEAMH") on November 30, 2005, which is reflected

in SHP's inmate services log for that day. The plaintiff has one mental health appointment a month at SEAMH, and he did not miss his November appointment. (Cain Aff. at ¶ 18.)

20. All necessary care provided to the plaintiff was appropriate, timely and within the standard of care. (McWhorter Aff. at ¶ 17; Mitchell Aff. at ¶ 17; Cain Aff. at ¶ 20.)

21. On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made. (McWhorter Aff. at ¶ 18; Mitchell Aff. at ¶ 18; Cain Aff. at ¶ 21.)

### D. The plaintiff failed to exhaust administrative remedies.

22. At the time of the plaintiff's incarceration, the Covington County Jail had an inmate grievance procedure. (Clark Aff. at ¶ 4.) Grievances were required to be in writing and could be filed with any member of the jail staff. (*Id.*). Copies of grievance forms are kept in the inmate's jail file. (*Id.*) Jail policy provided an exception that allowed emergency grievances to be made orally. (*Id.*) It was a violation of jail policy to deny an inmate access to the grievance procedure. (*Id..* at ¶ 6.) The plaintiff was aware of the grievance procedure. (*Id..* at ¶ 5.) The plaintiff never filed a grievance related to any of his claims. (*Id.* at 7.)

## VI. LEGAL ARGUMENT

### A. The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for his Failure to Exhaust Administrative Remedies.

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner,* 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison

8

conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). The plaintiff in this case has failed to utilize two separate and distinct administrative remedies available to him. As a result, his claims are barred.

First, the plaintiff failed to properly utilize the grievance procedures provided at the local level in the Covington County Jail to address his claims prior to the filing of this lawsuit. The Covington County Jail had a grievance procedure. (Clark Aff. at 4.) The plaintiff never filed a grievance related to any of his claims. (Clark Aff. at ¶ 7.)

Second, the plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See *Brown v. Tombs,* 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the State provides an administrative remedy that the plaintiff failed to exhaust and the plaintiff failed to exhaust the Covington County Jail grievance procedure, the plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk,* 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

    B.    <u>SHP Is Due To Be Dismissed, Because There is No Evidence that SHP Itself Directly Caused the Violation of Any Constitutional Right Through Its Adoption of Some Official Policy or Practice.</u>

Precedent from the U.S. Court of Appeals for the Eleventh Circuit provides that when a private corporation contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, then that

9

corporation should be treated as a governmental entity and as a person acting under color of state law within the meaning of 42 U.S.C. §1983. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997); *Edwards v. Alabama Department of Corrections*, 81 F.Supp.2d 1242, 1254 (M.D. Ala. 2000). Although the private entity operating under such circumstances is not entitled to qualified immunity, certain special requirements for liability apply. *Edwards*, 81 F.Supp.2d at 1254-55; *McDuffie v. Hopper*, 982 F.Supp. 817, 825 (M.D. Ala. 1997). Thus, in order to prove that SHP should be liable in this case, the plaintiff would have to demonstrate that SHP itself directly caused the violation of his constitutional rights through SHP's adoption of some official policy or practice. See, *e.g., Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1502-03 (11th Cir. 1985). Plaintiff has failed to assert a specific allegation against SHP in his complaint, and a theory of *respondeat superior* is insufficient in any event to support a §1983 claim. Therefore, even the broad assertion that SHP was generally responsible for the acts or omissions of its medical staff would be inadequate to prove liability. For this reason, SHP is entitled to a full and final summary judgment. See, *Monell*, 436 U.S. at 691-92; *Edwards*, 81 F.Supp.2d at 1255.

    C.    <u>The Plaintiff's Claims Against SHP, Dr. McWhorter and Nurse Mitchell Are Due To Be Dismissed, Because Plaintiff Has Presented No Evidence That Defendants Were Deliberately Indifferent to a Serious Medical Condition.</u>

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

10

recognize the necessity for a doctor's attention." *Kelley v. Hicks*, 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." *Id.* at 105-06. Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. *Id.* at 104.

In addition, an inmate does not have a right to a ***specific*** kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

In this case, there is absolutely no evidence from which a jury could find that SHP, Nurse Mitchell and/or Dr. McWhorter acted with deliberate indifference to any serious medical need of the plaintiff. On the contrary, if anything, it appears that Dr. McWhorter's order that the plaintiff receive Zestoretic helped the plaintiff by lowering his blood pressure. Although the plaintiff was taken to the hospital to be assessed for a stroke, there is no evidence in the medical chart that he actually suffered a stroke nor is there any indication that the blood pressure medicine Zestoretic had anything to do with his need to go to the hospital. Moreover, as to the administration of "bedtime" medication at 4:00 p.m., the record reflects that the plaintiff was administered Trazadone pursuant to Dr. McWhorter's orders and that the plaintiff had no problems arising out of his taking Trazadone. The fact that he would be administered this medication between 4:00 p.m. and 5:00 p.m. as opposed to later in the evening would, in Dr. McWhorter's opinion, have no negative impact on the plaintiff.

Finally, the plaintiff did miss his November 21st mental health appointment, but it was rescheduled for November 30, 2005 and the plaintiff was able to attend on that date. Therefore, the plaintiff did not miss his monthly mental health appointment.

## VII. REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

A. <u>Summary Judgment Standard</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants move this Court to enter summary judgment in their favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant, However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves*, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299. "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar*, 142 F.3d 26, 40 (1st Cir. 1998).

B.   Motion for Summary Judgment

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

*/s/ Robert N. Bailey*
Daniel F. Beasley
Robert N. Bailey, II

LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
P.O. Box 2087
Huntsville, Alabama 35804
(256) 535-1100

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 20 day of February, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Scott W. Gosnell, Esq.
Webb and Eley
P.O. Box 240909
Montgomery, AL 36124-0909

and I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant:

Bobby Joe Suggs
Covington County Jail
290 Hillcrest Drive
Andalusia, AL 36420

_____
Of Counsel

[yr] P:\RNB\Southern Health\Suggs\Pleadings\SuggsSpecial Report.wpd