IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BOBBY JOE SUGGS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMIE MITCHELL, NURSE, *et al.*, )<br>)<br>Defendants. ) | CIVIL ACTION NO. 2:05-CV-1154-T |

## AFFIDAVIT OF MILLARD McWHORTER, M.D.

Before me, the undersigned notary public, in and for said County and State, personally appeared **Millard McWhorter, M.D.**, who, after first being duly sworn by me, deposes and states as follows:

1. My name is Millard McWhorter, M.D. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2. I obtained my medical degree from Meharry Medical College in Nashville, Tennessee in 1981. From 1981 to 1984, I performed a residency at Morehouse Family Practice Program at Southwest Community Hospital in Atlanta, Georgia. From January 1985 to May 1986, I was in private practice in Monticello, Georgia. From June 1986 to September 1992, I was the medical director at Red Level Medical Clinic in Red Level, Alabama. During this same timeframe, I was also a consultant to the Community Mental Health First Step Clinic for Alcohol and Drug Abuse in Red Level, Alabama. From September 1987 to April 1989, I was the chief of staff and medical director at Columbia Regional Medical Center in Andalusia, Alabama. From January 1989 to December 1992, I was a physician for Spectrum Emergency Services, where I worked in emergency

rooms in Georgia and Alabama. From October 1992 to December 1993, I was a staff physician for the Davis Medical Group in Huntsville, Alabama. From January 1994 to July 1999, I was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, I was the medical director for Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present, I have been employed by Southern Health Partners, Inc. as the medical director of the Covington County Jail in Andalusia, Alabama, and I have also been in private practice in Andalusia, Alabama.

3.  I am licensed to practice medicine in the State of Alabama and have been so since 1986. I am also licensed to practice medicine in the states of Georgia and Tennessee.

4.  Southern Health Partners, Inc. (hereinafter SHP) provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action (November 7, 2005), I was the medical director in the jail and Jamie Mitchell was the medical team administrator.

5.  When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

6.  As I understand the plaintiff's complaint, he alleges that SHP, Jamie Mitchell and myself denied the plaintiff proper medical care by failing to provide him with the correct blood

pressure medication, which plaintiff alleges caused him to have a stroke, and administering the plaintiff's "bedtime" medication to the plaintiff at 4:00 p.m.

7. I have reviewed SHP's medical chart concerning the plaintiff and SHP's inmate services log for November 11, 2005.

8. On November 1, 2005, the plaintiff was booked into the Covington County Jail and completed a medical screening form where he noted a history of "mental illness," "attempted suicide," "mental emotional upset," "hypertension," "contagious disease" and "hepatitis." At the time of booking, he was taking several medications, including Lithium, Trazadone, milk thistle, stool softener and Benicar HCT.

9. On the next day, November 2, 2005, I treated the plaintiff, who presented to me with a history of hypertension and bipolar disorder. My observation noted a blood pressure of 166/99. I ordered that he receive Zestoretic 20/12.5 every day for his hypertension and continued him on Lithium and Trazadone for his bipolar disorder.

10. Based on my medical experience, Zestoretic is an appropriate and standard medication to administer to patients suffering from hypertension, and is comparable to Benicar HCT, which the plaintiff was taking for hypertension upon his incarceration. I did not prescribe Benicar HCT, because Benicar HCT was not on SHP's formulary of accepted medications.

11. On November 11, 2005, the plaintiff was sent to the emergency room of Andalusia Regional Hospital ("ARH") to be assessed for CVA (stroke) versus TIA (transient ischemic attack). Dr. John Maddox treated the plaintiff at ARH. Based on my review of Dr. Maddox's notes, Dr. Maddox did not diagnose the plaintiff as having a stroke or TIA. Moreover, Dr. Maddox did not change any of the plaintiff's blood pressure medications. Specifically, Dr. Maddox did not take the plaintiff off Zestoretic or prescribe any additional or different blood pressure medication. As such,

the plaintiff continued to receive Zestoretic when he was discharged back to the Covington County Jail on November 13, 2005. Based upon my personal knowledge and review of the plaintiff's chart, the plaintiff never completed any sick call requests related to his taking Zestoretic nor is there any indication that Zestoretic caused him any problems.

12. In fact, the only sick call slip completed by the plaintiff prior to filing the above-styled lawsuit was on November 23, 2005, where he complained of a bad cold. In response to his complaint, he was seen the next day (November 24, 2005) by nurse Dianne James, who assessed him as having cold symptoms. I ordered that he receive CTM 4 mgs, two tablets twice a day for seven days, ibuprofen 800 mgs twice a day for five days, Robitussin 10 cc twice a day for four days, and to drink at least one liter of fluids per day. He was to notify medical staff if he did not improve in three to four days.

13. On January 25, 2006, I saw the plaintiff for a follow-up to his treatment at ARH by Dr. Maddox. I performed a neurological exam on the plaintiff and found that neurological function was intact. My assessment was that the plaintiff may have had a possible TIA probably secondary to blood pressure control but I found no defect present nor did I find that further diagnostic studies were needed.

14. Based upon my review of the plaintiff's medical chart and my personal knowledge of treating the plaintiff, it is my opinion that the administration of the blood pressure medication Zestoretic to the plaintiff did not cause the plaintiff to suffer a stroke nor has it harmed the plaintiff in any way. In fact, the Zestoretic has actually improved the plaintiff's hypertension; the plaintiff came to the jail with a blood pressure of 166/99 and subsequent vital signs on November 23, 2005 (140/80-72) show improvement in this area. Moreover, it is my opinion that the plaintiff has not suffered a stroke while incarcerated at the Covington County Jail.

15. With regard to the plaintiff's complaint that he was administered "bedtime" medication at 4:00 p.m., the only medication which I ordered him to take "hs" (hour of sleep) is Trazadone. I understand that the nursing staff administers their last pill call to all inmates between 4:00 p.m. and 5:00 p.m. Based upon my review of the medical chart, the plaintiff never completed any sick call request regarding any problem relating to the timing of when he was administered Trazadone. Moreover, based on my medical experience, there should be no negative effects of receiving Trazadone between 4:00 and 5:00 p.m.

16. All of the information contained herein is based upon my personal knowledge, the plaintiff's chart and SHP's inmate services log for November 11, 2005.

17. All necessary care provided to the plaintiff was appropriate, timely and within the standard of care.

18. On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_____
Millard McWhorter, M.D.

STATE OF ALABAMA          )
                          )
COUNTY OF Madison         )
                          )

I, the undersigned Notary Public in and for said county in said state, hereby certify that Millard McWhorter, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

GIVEN UNDER MY HAND and official seal on this the 20 day of ~~January~~ February, 2006.

_____
Notary Public
My Commission Expires: 12-3-2007