IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BOBBY JOE SUGGS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 2:05-CV-1154-T |
| JAMIE MITCHELL, NURSE, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## AFFIDAVIT OF JAMIE MITCHELL, R.N.

Before me, the undersigned notary public, in and for said County and State, personally appeared **Jamie Mitchell, R.N.**, who, after first being duly sworn by me, deposes and states as follows:

1. My name is Jamie Mitchell. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2. I obtained my LPN degree from Ed Reid Technical College in Evergreen, Alabama in 1983, and became licensed by the State of Alabama as an LPN. From 1983 to 1989, I was an LPN on the medical/surgery unit of D.W. McMillian Hospital in Brewton, Alabama. From 1989 to 1991, I was an LPN on the ICU unit of D.W. McMillian Hospital in Brewton, Alabama.

3. In 1991, I obtained my RN degree from Jefferson Davis, Jr. College in Brewton, Alabama and became licensed by the State of Alabama as an RN. From 1991 to 1997, I was an RN on the ICU unit of D.W. McMillian Hospital in Brewton, Alabama. From February 1998 to February 2000, I was a registered nurse for Correctional Medical Services at Fountain/Holman Correctional Facilities in Atmore, Alabama. From March 2000 to August 2000, I was an agency nurse for Star-Med in Mobile, Alabama. From August 2000 to March 2002, I was a registered nurse at Gentiva

Home Health Services in Andalusia, Alabama. From March 2002 to August 2005, I was a registered nurse in the emergency department of Elba General Hospital in Elba, Alabama.

4. From August 2005 to November 16, 2005, I was employed as the medical team administrator for Southern Health Partners, Inc. at the Covington County Jail in Andalusia, Alabama. Currently, I am employed as a registered nurse on the medical/surgical floor of Andalusia Regional Hospital in Andalusia, Alabama.

5. Southern Health Partners, Inc. (hereinafter SHP) provides medical care to inmates in various jail facilities including the Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action (November 7, 2005), the medical director in the jail was Dr. Millard McWhorter and I was the Medical Team Administrator.

6. When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

7. As I understand the plaintiff's complaint in this case, he alleges that SHP, Dr. McWhorter and myself denied the plaintiff proper medical care by failing to provide him with the correct blood pressure medication, which plaintiff alleges caused him to have a stroke, and administering the plaintiff's "bedtime" medication to the plaintiff at 4:00 p.m.

8. I have reviewed SHP's medical chart concerning the plaintiff and SHP's inmate services log for November 11, 2005.

9. On November 1, 2005, the plaintiff was booked into the Covington County Jail and completed a medical screening form where he noted a history of "mental illness," "attempted suicide," "mental emotional upset," "hypertension," "contagious disease" and "hepatitis." At the time of booking, he was taking several medications, including Lithium, Trazadone, milk thistle, stool softener and Benicar HCT.

10. On the next day, November 2, 2005, Dr. McWhorter treated the plaintiff, who presented with a history of hypertension and bipolar disorder. Dr. McWhorter noted that the plaintiff's blood pressure was 166/99, and he ordered that the plaintiff receive Zestoretic 20/12.5 every day for hypertension and continued the plaintiff on Lithium and Trazadone for bipolar disorder.

11. Based on my nursing experience, Zestoretic is a common medication administered to patients suffering from hypertension. In accordance with Dr. McWhorter's order, I and the nursing staff administered Zestoretic to the plaintiff.

12. On November 11, 2005, the plaintiff was sent to the emergency room of Andalusia Regional Hospital ("ARH") to be assessed for CVA (stroke) versus TIA (transient ischemic attack). Dr. John Maddox treated the plaintiff at ARH. Based on my review of Dr. Maddox's notes, Dr. Maddox did not change any of the plaintiff's blood pressure medications. Specifically, Dr. Maddox did not take the plaintiff off Zestoretic or prescribe any additional or different blood pressure medication. The plaintiff continued to receive Zestoretic when he was discharged back to the Covington County Jail on November 13, 2005. From November 14 through November 16, 2005, I administered Zestoretic to the plaintiff at pill call, and he did not object to taking it or make any mention that it was causing him any problems. Based upon my personal knowledge and review of the plaintiff's chart, the plaintiff never completed any sick call requests related to his taking Zestoretic nor is there any indication that Zestoretic caused him any problems.

13. In fact, the only sick call slip completed by the plaintiff prior to filing the above-styled lawsuit was on November 23, 2005, where he complained of a bad cold. In response to his complaint, he was seen the next day (November 24, 2005) by nurse Dianne James, who assessed him as having cold symptoms. Dr. McWhorter ordered that he receive CTM 4 mgs, two tablets twice a day for seven days, ibuprofen 800 mgs twice a day for five days, Robitussin 10 cc twice a day for four days, and to drink at least one liter of fluids per day. The plaintiff was to notify medical staff if he did not improve in three to four days.

14. Based upon my review of the plaintiff's medical chart and my personal knowledge of treating the plaintiff, the administration of Zestoretic has improved the plaintiff's hypertension; the plaintiff came to the jail with a blood pressure of 166/99 and subsequent vital signs on November 23, 2005 (140/80-72) show improvement in this area.

15. With regard to the plaintiff's complaint that he was administered "bedtime" medication at 4:00 p.m., the only medication which Dr. McWhorter ordered him to take "hs" (hour of sleep) is Trazadone. The nursing staff administers the last pill call to all inmates between 4:00 p.m. and 5:00 p.m, and the plaintiff was administered Trazadone during this time frame. Based upon my personal knowledge and review of the plaintiff's medical chart, the plaintiff never completed any sick call request regarding any problem related to the timing of when he was administered Trazadone.

16. All of the information contained herein is based upon my personal knowledge, the plaintiff's chart and SHP's inmate services log for November 11, 2005.

17. All necessary care provided to the plaintiff was appropriate, timely and within the standard of care.

18. On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_Jamie Mitchell R.N._
Jamie Mitchell, R.N.

STATE OF ALABAMA        )
                        )
COUNTY OF Madison       )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that Jamie Mitchell, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

    GIVEN UNDER MY HAND and official seal on this the 20 day of ~~January~~ February, 2006.

_Robert N. Bu__
Notary Public
My Commission Expires: 12-3-2007